**REILLY v. SABIN et al.**

**No. 6532.**

United States Court of Appeals for the District of Columbia.

Argued Oct. 11, 1935.

Decided Dec. 2, 1935.

H. Winship Wheatley and H. Winship Wheatley, Jr., both of Washington, D. C., for appellant.

W. Gwynn Gardiner, I. Irwin Bolotin, and George C. Warner, Jr., all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, Associate Justice.

H. R. Howenstein Company (a corporation) was adjudicated a voluntary bankrupt February 23, 1935. Appellant, John A. Reilly, was appointed trustee March 12, 1935. Five days later he presented a petition to the bankruptcy court in which he reported an offer for the purchase of certain real estate, the legal title to which was in the bankrupt estate, and asked permission of the court to sell it free and discharged of liens. He also asked that the court enjoin appellees Sabin and Carter from asserting, in certain equity proceedings then pending in the Supreme Court of the District of Columbia against Herman R. Howenstein personally, and others, any lien either of them might have on the property in question, and require them, instead, to assert their rights in the bankruptcy court, and not elsewhere.

Sabin and Carter in their answers denied the jurisdiction of the bankruptcy court to stay the proceedings in the equity court and alleged, as to appellee Anna S. Sabin, that she had on the 21st day of October 1933, obtained a judgment against Herman R. Howenstein for $50,000, and on February 27, 1934, another judgment against Howenstein for $15,000; that execution was

duly issued on both judgments on the 5th day of October, 1934, and returned nulla bona; that, as to appellee Carter, he had obtained two judgments aggregating $42,000 against Howenstein in September, 1933, on which execution issued in November, 1934, also returned nulla bona. They further alleged that in 1929, Howenstein, for the purpose of hindering and defrauding them and preventing the collection of the amounts due them, had transferred all of his real estate holdings in the District of Columbia, consisting of more than 100 separate pieces of real property, to the bankrupt corporation, H. R. Howenstein Company; that this transfer was fraudulent and was without any consideration; and that the bankrupt corporation was itself wholly under Howenstein's domination and control.

The answers further showed that on November 10, 1934, Sabin filed in the Supreme Court of the District of Columbia a judgment creditor's bill in which Carter, by leave of court, intervened on November 22, 1934; that in this bill they prayed that a decree be entered setting aside and declaring of no legal effect the transfer of the properties enumerated and described in the bill (including the property proposed to be sold by the trustee in bankruptcy); and that the court decree that the property is in fact the property of Howenstein personally, transferred by him to the bankrupt for the purpose of hindering, delaying, and defrauding Sabin and Carter in the collection of their debts; and that the property be sold and their judgments paid.

From this condensed statement of the pleadings it will be seen that the judgments against Howenstein were obtained considerably more than four months prior to the commencement of the proceedings in bankruptcy, but that the judgment creditors' suit, designed to set aside the alleged fraudulent transfer and to subject the real estate to the payment of the judgments, was begun within four months of the filing of the petition. The bankruptcy court, relying upon Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060, refused to enjoin the creditors' suit.

■■ On this appeal the single question is whether the judgment liens asserted by Sabin and Carter attached and became effective from the dates on which the judgments were obtained. If they did, obviously Straton v. New is controlling, for it is said there (283 U.S. 318, page 327, 51 S.Ct. 465, 75 L.Ed. 1060) that if the action in the state court is merely in the nature of a proceeding to obtain the avails of the judgment lien, it should not be enjoined by the bankruptcy court.

We think the question must be answered in the light of the relevant statutes in effect in the District of Columbia.

Section 323 of title 24 of the District of Columbia Code (1929) provides that: "Every final judgment at common law * * * for the payment of money from the date when the same shall be rendered, * * * shall be a lien on all the freehold and leasehold estates, legal and equitable, of the defendants bound by such judgment, * * * but such liens on equitable interests shall be enforced by bill in equity. * * *" Section 11 of title 11 of the Code provides that: "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands * * * given * * * with the intent to hinder, delay, or defraud creditors * * * shall be void as against the persons so hindered, delayed, or defrauded: * * *"

In the view we take of the question, we think it is clear that by the terms of the statute a final judgment at common law is made a lien, not only upon the legal, but as well upon the equitable, interests in real estate of the judgment debtor from the date when the same is rendered, and that the statute (section 11, title 11) likewise makes every conveyance of lands with intent to hinder, delay, and defraud creditors not merely voidable, but void, as against the persons so hindered, delayed, or defrauded. Applying this rule to the facts as we have them here, it is clear that when Sabin and Carter obtained judgments against Howenstein, perfected as the statute required, the effect was to impose liens from that time upon any real estate which Howenstein may have theretofore conveyed away in fraud of his creditors.

If this conclusion is correct, it necessarily follows that section 67f of the Bankruptcy Act (11 U.S.C.A. § 107(f) is not in point, for, as is said in Metcalf Bros. & Co. v. Barker, 187 U.S. 165, 23 S.Ct. 67, 71, 47 L.Ed. 122, "A judgment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the statute, which is plainly confined to judgments creating liens." Here the liens attached more than four months prior to the bankruptcy proceedings and continued in force until satisfied or discharged. Property of a debtor transferred in fraud of

creditors still remains the debtor's property, and the lien of a subsequent judgment is as effective, in time, against the fraudulent grantee as against the judgment debtor. Hillyer v. LeRoy, 179 N.Y. 369, 72 N.E. 237, 103 Am.St.Rep. 919; Tucker v. Foster, 154 Va. 182, 152 S.E. 376, 69 A.L.R. 220. The fact that the deed is recorded prior to the time the judgment is rendered does not postpone the judgment lien to the time the suit to set aside the deed is brought; and this is true because, as we have seen, the statutes make the transfer void and the judgment a lien from the "date when the same shall be rendered." See Biggs v. Campbell, 46 App.D.C., 288–291.

In this view, it follows, as we think, that Sabin and Carter's bill, not being a bill to acquire liens, but a bill to enforce liens which had existed more than four months before bankruptcy, may not be stayed by the bankruptcy court.

· Affirmed.