In re SKIDMORE.

No. 4484.

District Court, N. D. Alabama, Middle Division.

Aug. 25, 1939.

M. F. Lusk, of Guntersville, Ala., for trustee.

Claude D. Scruggs, of Guntersville, Ala., for plaintiffs.

William D. Denson, of Birmingham, Ala., for petitioner.

MURPHREE, District Judge.

This matter comes before the court on a review of (1) certain orders of the Referee entered on July 12, 1939, authorizing Lydia Nation Shed and others to proceed in the Circuit Court of Marshall County, Alabama, to enforce their rights by virtue of attachments levied in aid of pending suits, and (2) of certain orders denying the trustee's motions to disallow certain amended claims of said parties. By stipulation of the parties all of such matters have been consolidated in one petition of review and certificate of the Referee.

At the time the voluntary petition in bankruptcy was filed on November 25, 1938, in this cause, five parties plaintiff had

pending in the Circuit Court of Marshall County, Alabama, five separate suits for damages against the bankrupt. Said suits were aided by attachments levied on four acres of land which appear in all respects regular and under Section 6196 of the Code of Alabama created liens on the four acres of land of the bankrupt, which liens have existed since September, 1933.

After a discharge in bankruptcy was granted, said plaintiffs filed one day prior to the expiration of six months' period for filing claims, (1) their separate petitions in the Bankruptcy Court for leave to proceed with said suits in the State Court for the enforcement of their liens and the liquidation of their claims, and (2) their separate "affidavits" or "notices of claim" containing the following words, to-wit:

" * * * said deponent files this notice of claim *for the sole purpose of protecting any rights said deponent may have in the property of said bankrupt now in the possession* of this Honorable Court, and because of the fact that said H. M. Skidmore has scheduled the undersigned as a creditor of the bankrupt estate.

"At Blountsville, in said District of Alabama, on the 22 day of May, 1939, came G. M. Alldredge, who sues as Administrator of the Estate of Eva Alldredge, deceased, of Blountsville, in the County of Blount, in said District of Alabama, and made oath, and says that H. M. Skidmore, the person by whom a petition of adjudication of bankruptcy has been filed, was at and before the filing of said petition and still is, justly and truly indebted to said deponent in the sum of One Hundred Thousand Dollars, ($100,000.00); that the indebtedness arose as follows: * * *"

It is presumed that it was their intent to file "Proofs of Claim" for some purpose in compliance with Section 57a of the Chandler Act of 1938, 11 U.S.C.A. § 93(a). The Referee duly allowed certain objectionable averments of the same to be stricken by amendment.

At the time said "petitions for leave to proceed" and purported "proofs of claim" were filed, the Trustee had taken possession of the sum of $2,249.23 in money and the said four acres of land, and there were several other unsecured creditors of the bankrupt estate whose claims had been duly proven and allowed. It further appears, though not stated, that the estate could be distributed and closed were it not for the disposition of the litiga-

tion of the five suits in the state court, which have up to this time existed for some five years, and just how much time in the future will be taken cannot be estimated closely.

The Trustee filed written objections to the allowance of either the petitions for leave to proceed or the "Proofs of Claim".

Briefly summarized, his contention is that the defense of the suits in the State Court would unduly delay the administration of the bankruptcy estate and that said plaintiffs should be required to prosecute their claims before the bankruptcy court or, at least, that the referee should set or direct a limited time for the liquidation of them.

The Trustee contends that as to the purported "Proofs of Claim" filed by said parties plaintiff with their said petitions that they are really not in form claims, that they do not comply with the provisions of the bankruptcy law, that they are barred by six months' limitation under Section 57n, 11 U.S.C.A. § 93(n) or that the Referee should not have allowed amendments to them.

The Referee's certificate of review states the questions raised as follows:

(1) Does this court have jurisdiction to entertain a plenary action to determine the validity of an attachment lien levied more than four months prior to bankruptcy proceedings?

(2) Did this court commit error in allowing the filing of the amendment to said claims and in allowing said claims to be filed as amended?

Regardless of whether these are all of the questions naturally arising from the application of the Bankruptcy Act to the above statement of facts, it would seem that both questions should be answered in the negative.

The attachment liens being regular on their face and having existed for a long time prior to four months of bankruptcy, the bankruptcy court was without jurisdiction other than to examine into their prima facie existence and validity, to pass upon the question of allowing the claimants to proceed in the State Court, and to direct the Trustee to prosecute or defend the suits involving the liens in a proper forum, if he so determines. Section 23 of the Chandler Act, 11 U.S.C.A. § 46. Section 67a of the Chandler Act, 11 U.S.C.A. § 107(a). Straton v. New, 283 U.S.

318, 51 S.Ct. 465, 75 L.Ed. 1060. In re Cherokee Pub. Service Co., D.C., 20 F. Supp. 195, affirmed 8 Cir., 94 F.2d 536.

■ The right to amend, after the bar time, claims properly filed within the limitation period is well established. Amendments must be germane to the claim and facts filed originally and must not be a complete departure or set up entirely new claims, and the matter is largely discretionary. Cook v. Union Trust Co., 4 Cir., 71 F.2d 645; 8 Corpus Juris Secundum, Bankruptcy, p. 1297, § 433; In re Soltmann, D.C., 238 F. 241; In re Whicker, 5 Cir., 47 F.2d 106; U. S. Code Annotated Title 11, § 93(a) notes 19 and 20.

Prior to the enactment of the Chandler Act unliquidated claims for negligence not reduced to judgment were not provable in bankruptcy. Subdivision 6½ of Section 63a of the Bankruptcy Act of 1898 was enacted June 7, 1934, 11 U.S.C.A. § 103(a) (6½), adding the words—"as evidenced by a judgment of a court of competent jurisdiction, in any action for negligence instituted prior to adjudication of defendant in such action in bankruptcy and pending at the time of the filing of petition in bankruptcy, whether voluntary or involuntary."

■ The present Chandler Bankruptcy Act has eliminated the requirement that "damages" be liquidated by judgment before becoming provable, providing as follows: "The right to recover damages in any action for negligence instituted prior to and pending at the time of the filing of the petition in bankruptcy." Section 63a, Subdivision (7), 11 U.S.C.A. § 103(a) (7).

Therefore, the claimants have unliquidated claims "provable" in bankruptcy. They are also secured claims.

■ The right of a secured claimant to exhaust his security and prove a general unsecured claim for the deficiency or excess over the value of the security is recognized by the Bankruptcy Law. Section 57h, 11 U.S.C.A. § 93(h): "The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims; and a dividend shall be paid only on the unpaid balance. Such determination shall be under the supervision and control of the court."

■ Although there is some difference of authority as to the necessity for filing a claim by a secured creditor (see p. 910, Remington on Bankruptcy, Vol. 2), there is no question but that a secured creditor, who wishes to prove an unsecured claim for the excess of his debt over the value of the security held by him, must file a claim in strict compliance with Section 57(a). He should show a clear intent or purpose to share as to the excess in the general estate with the unsecured creditors. In re Hotel St. James Co., 9 Cir., 65 F.2d 82; In re Thompson, 3 Cir., 227 F. 981; 8 C.J. S., Bankruptcy, p. 1300, § 433a, note 22.

"A secured creditor wishing to share in the general estate must file a proof of claim in compliance with the provisions of the Bankruptcy Act.

"Although a secured creditor need not file a proof of claim in order to preserve or enforce his rights against the specific property or its proceeds (supra Par. 261), he may, if he chooses, prove his claim against the general estate (supra par. 387), subject to the limitation that it will be allowed only for such sum as is owing over and above the value of the security (supra Par. 421). *If he wishes to assert his claim against the general estate, however, he must file a proof of claim for that purpose in compliance with the* provisions of the Bankruptcy Act the same as any other creditor; and, in addition, show that his claim is a secured one by setting forth his securities in accordance with that portion of Sec. 57a (11 U.S.C.A. 93(a), requiring that a creditor set forth in his proof whether any, and, if so, what securities are held for the claim. This requirement, however, does not preclude a creditor from waiving his security and making his proof as an unsecured creditor; and, as shown in Par. 478 infra, if he proves his claim as unsecured without setting forth his securities he will often be regarded as having waived his rights in connection with the same."

8 C.J.S.Bankruptcy, p. 1296, § 431.

■ Section 57h clearly contemplates that such secured creditor will apply to the Bankruptcy Court for the determination of the value of his security and the fixing and allowance of his unsecured claim for the excess. An examination of the purported "notices of claims" filed in this cause re-

veals no such desire to have the amount of the claim or value of the security fixed, but rather negatives that idea by the following words: "the sole purpose of protecting any rights said deponents may have in the property, etc.", thus disclosing a desire to only pursue their liens. There is no request to have the Bankruptcy Court value the security, nor submission to the value to be fixed by the court, nor offer to credit the value of the security and prove unsecured claims for the balance. In re Rubel, D.C., 166 F. 131.

Since the claims are unliquidated, their rights are further circumscribed by the provisions of Section 57, subdivision d, 11 U.S.C.A. § 93(d): "Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest or unless their consideration be continued for cause by the court upon its own motion: Provided, however, That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this Act [title]."

The liquidation of their claims in the State Court will apparently take some time and will necessarily be at the expense of the other creditors. The right to prove an unliquidated claim is not an absolute right in all cases, but subject to the limitations prescribed by Section 57(d).

The Referee was correct in allowing the claimants to proceed in the State Court to reduce their claims to judgment and enforce their attachment liens. It would appear, however, that he should have gone further and specified by order that the notices of claims be allowed merely as secured claims and the claimants' rights limited to the four acres of land. No good reason appears why a distribution could not be made to the other creditors of the balance of the estate, after deciding whether to authorize or direct the trustee to defend the pending actions in the state court and reserving such amount as would be ample to defray the costs of such a defense. A decision on these matters will of necessity involve an exercise of discretion after consideration of all facts and circumstances, which the Referee is best able to do.

An order, in conformity with this opinion, will be entered.